1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

CONTINENTAL CARS, INC., a
Washington corporation, dba AUBURN
VALLEY MAZDA,

9

10

Plaintiff,

11

v.

12

MAZDA MOTOR OF AMERICA, INC.,
a California corporation, dba MAZDA
NORTH AMERICAN OPERATIONS,

13

14

Defendant.

CASE NO. C11-5266BHS

ORDER DENYING
PLAINTIFF'S MOTION
TO REMAND

15

16      This matter comes before the Court on Plaintiff's ("Auburn Valley") motion for

17  remand (Dkt. 5). The Court has reviewed the briefs filed in support of and in opposition

18  to the motions and the remainder of the file and hereby denies Auburn Valley's motion

19  for the reasons stated herein.

20                          **I. PROCEDURAL HISTORY**

21      This matter arises out of a auto dealership contract dispute between Auburn Valley

22  and Mazda. On April 6, 2011, Mazda timely removed this action from state court. Dkt. 1.

23  On April 7, 2011, Auburn Valley moved for remand. Dkt. 5. On April 18, 2011, Mazda

24  responded in opposition. Dkt. 9. On April 22, 2011, Auburn Valley replied.

25                          **II. FACTUAL BACKGROUND**

26      The facts that give rise to this action are generally undisputed. Whether the amount

27  in controversy exceeds $75,000, however, is disputed.

28

ORDER - 1

1
2
3
4
5

On or about October 2005, Auburn Valley and Mazda executed a dealer agreement (the "Agreement"). Complaint (Dkt. 5, Ex. A) ¶ 4. This Agreement contained an "immediate termination" provision, which could be triggered in the event that a "Dealer Party" (defined by the contract) was convicted of or pleaded guilty to a felony charge.[1] *Id.* ¶ 6 (reproducing relevant termination provision).

6
7
8
9
10
11
12

The parties agree that on January 7, 2011, Wolfgang Roempke ("Roempke"), Auburn Valley's principal operator at all relevant times, was sentenced for a felony violation of the Clean Air Act. In response to Roempke's conviction, Mazda issued a notice of termination to Auburn Valley under RCW 46.96.070(2)(c) (requiring manufacturer to issue proper written notice before terminating a new motor vehicle dealer franchise) and Section 22(B)(i)(c) of the Agreement. *Id.* ¶ 7.

13
14
15
16
17
18

Auburn Valley asserts that Mazda violated the terms of their Agreement and the Washington Consumer Protection Act ("WCPA") (RCW 19.86, *et seq.*), and caused and will continue to cause Auburn Valley "substantial monetary damages." *Id.* ¶¶ 11-13. As a result, Auburn Valley seeks damages to be proven at trial, treble damages as provided by the WCPA, other equitable relief as may be available, and costs and reasonable attorneys fees under RCW 19.86 *et seq. Id.* at 6.

19

### III.  DISCUSSION

20

**A.    Amount in Controversy**

21
22
23
24
25

The parties agree that diversity of citizenship exists between the parties in this case. Federal diversity jurisdiction therefore hinges on whether the requisite amount in controversy exceeds $75,000 at the time the suit was filed. *See* 28 U.S.C. § 1332. The

26
27
28

[1]This provision is further qualified, but the provision is not at issue at present. The issue at bar concerns only whether the amount in controversy exceeds $75,000, which is not affected by whether or not the termination provision was properly invoked by Mazda.

ORDER - 2

1  amount in controversy is determined by the amount at stake in the underlying litigation.

2  *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005).

3      Because "it is *unclear* what amount of damages [Auburn Valley] has sought . . .

4  [Mazda] bears the burden of actually proving the facts to support jurisdiction, including

5  the jurisdictional amount." *Id*. at 567 (collecting cases). "Under this burden, [Mazda]

6  must provide evidence establishing that it is 'more likely than not' that the amount in

7  controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404

8  (9th Cir. 1996).

9      "The amount in controversy requirement may be satisfied . . . if either party can

10  gain or lose the jurisdictional amount." *Sanchez*, 102 F.3d 398, 405 (9th Cir. 1996) (citing

11  *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for

12  purposes of calculating amount in controversy, "[t]he value of the thing sought to be

13  accomplished by the action may relate to either or any party to the action") (citation,

14  internal quotation marks omitted)); *see also Government Employees Ins. Co. v. Lally*, 327

15  F.2d 568, 569 (4th Cir. 1964) (citing *Ridder* in support of proposition that "the amount in

16  controversy is the pecuniary result to either party which that judgment would produce").

17

18      Here, in addition to monetary damages to be proven at trial, Plaintiff seeks

19  "equitable relief in the form of specific performance" under the Agreement. Dkt. 5 at 6

20  (referring to Complaint); *see also* Complaint at 6 (requesting equitable relief). Plaintiff is,

21  therefore, either seeking to be compensated, at a minimum, for breach of contract or to

22  have the contract reinstated and compensated for any damages that inhere thereto.

23      One pecuniary result of enforcing Mazda's performance under the Agreement is at

24  least Auburn Valley's benefit of running the franchise.  Mazda has supplied sufficient

25  evidence for purposes of determining whether the jurisdictional amount is satisfied that,

26  at the time of removal, Auburn Valley possessed vehicles ready for sale having a gross

27  profit value of approximately $109,740. Declaration of Alan Schapel (Dkt. 11) ¶ 5. If

28

ORDER - 3

Auburn Valley prevails in its action it may be entitled to specific performance, which would enable it to realize the revenue generated by such sales, or it would be able to obtain damages in the amount of lost opportunity for these sales. Either way, the jurisdicitional amount would be satisfied based on potential auto sales revenue. Auburn Valley has not adequately refuted Mazda on this point.

Even if Auburn Valley could establish that the foregoing potential pecuniary result would result in something less than the jurisdictional amount, the amount could be satisfied by aggregating the potential damages to be paid to Auburn Valley. Indeed, Auburn Valley seeks damages under the WCPA, which if successful, could result in the award of treble damages and statutory attorneys' fees. Aggregating these amounts with any monetary damages as a result of Mazda's alleged breach of contract are easily presumed by the Court to be over $75,000.

Based on the foregoing, Mazda has adequately met its burden to withstand Auburn Valley's motion for remand because Auburn Valley more likely than not stands to gain a pecuniary result well in excess of the jurisdictional amount.

**B.      Attorneys' Fees Not Warranted**

Because Auburn Valley does not prevail in its motion for remand, the Court denies its motion for attorneys fees as moot.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Auburn Valley's motion for remand is **DENIED** as discussed herein.

DATED this 12th day of May, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 4