# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

CONTINENTAL CARS, INC., a Washington corporation, dba AUBURN VALLEY MAZDA,

Plaintiff,

v.

MAZDA MOTOR OF AMERICA, INC., a California corporation, dba MAZDA NORTH AMERICAN OPERATIONS,

Defendant.

CASE NO. C11-5266BHS

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff's ("Auburn Valley") motion for preliminary injunction (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 20, 2011, Auburn Valley filed the instant motion for preliminary injunction. Dkt. 19. On June 13, 2011, Defendant (collectively "Mazda") filed a motion in opposition to the preliminary injunction motion combined with a motion to dismiss (Dkt. 22) pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim).[1] On June 17, 2011, Auburn Valley replied to Mazda's brief in opposition. Dkt. 24.

---

[1] Mazda's motion to dismiss is not yet ripe (noted for July, 8, 2011); the Court does not consider that motion herein.

ORDER - 1

Additionally, on June 22, 2011, Mazda filed a surreply in opposition to what it believed to be new arguments addressed in Auburn Valley's reply brief, which violates the court rules on motion practice.[2]

## II. FACTUAL BACKGROUND

This case arises out of Mazda's alleged breach of a contract ("Dealer Agreement") that it entered into with Auburn Valley. Auburn Valley and Mazda began their relationship in or about 1986. *Id*. ¶ 4. Auburn Valley is a new[3] automobile dealership doing business in Pierce County, State of Washington. Complaint (Dkt. 2-1) ¶ 2. In or about 2005, Auburn Valley and Mazda executed the Dealer Agreement at issue, which defined the manner, terms, and conditions of their relationship.

The specific provision at issue in the Dealer Agreement that gives rise to this action is paragraph 22(B), which provides in pertinent part as follows:

> **(i) Immediate Termination.** Dealer and Mazda agree that any instance of the conduct is so contrary to the goals, purposes and objectives of this Agreement as to warrant its immediate termination upon written notice by Mazda to Dealer:
> 
> \* \* \*
> 
> (c) Dealer, or any Owner, shareholder, member, partner, director, officer (collectively, "**Dealer Party**"), or parent company of Dealer, is convicted of a felony or enters a plea of guilty to a felony charge, which results in a significant adverse effect either on Dealer's Business or on the reputation of Dealer, Mazda or Mazda Dealers generally. Provided however, that if the subject Dealer Party owns a minority interest, or no interest, in Dealer, upon written notice from Mazda, Dealer shall have a reasonable period of time as set forth in such notice to disassociate from the Dealer Party in question through means and in a manner acceptable to Mazda.

*Id*. ¶ 6 (reproducing relevant portion of Dealer Agreement).

---

[2] Within its surreply, Mazda moves to strike the new arguments from Auburn Valley's brief or to permit it to file a short brief in opposition to those arguments. Because the Court reaches the issues addressed in Mazda's surreply, the Court denies its motion to strike. The Court also denies Mazda's motion to file additional briefing on the issue because such briefing is not necessary at this time.

[3] "New" in this context means that Auburn Valley is in the business of selling new Mazda cars, not that it is a new dealership.

ORDER - 2

On February 22, 2011, Mazda notified Auburn Valley that it was terminating the Dealer Agrement based on Section 22(B)(i)(c) of the agreement and RCW 46.96.070(2)(c). Complaint ¶ 7. Mazda based this termination on the felony conviction of Wolfgang "Tito" Roempke ("Roempke") who was the dealer principal at the time of his felonious acts. *See id*. It is undisputed that Roempke committed conspiracy to violate the Clean Air Act and defraud the United States, for making false statements, violation of asbestos workplace and safety standards, and failure to properly dispose of hazardous waste. *See, e.g.,* First Declaration of James Howard (Dkt. 10, Howard Decl. I) ¶ 13. It is also undisputed that Roempke's felony is the type of felony that can rise to the level of a terminable offense as contemplated by the Dealer Agreement. However, the parties dispute whether Roempke's felonious acts caused a terminable level of adverse impact upon Roempke's business or on the reputation of Mazda, or Mazda dealers generally, as contemplated by the agreement.

Auburn Valley alleges that Roempke transferred the extent of his interest in the dealership to his son, Kirk Roempke ("Kirk"). Declaration of Kirk Roempke (Dkt. 20) ¶ 5. Auburn Valley contends that Kirk sought to obtain an assignment of the Dealer Agreement from Roempke to him through Mazda so that the dealership would remain in force notwithstanding Roempke's felony. *Id*. ¶ 12. Auburn Valley alleges that Mazda caused Kirk to believe that it would overlook the felony and not seek to terminate the dealership under Section 22 of the Dealer Agreement. *See id*. ¶ 13.

On February 28, 2011, in response to Roempke's felony conviction and in reliance on Section 22 of the Dealer Agreement and RCW 46.96.070, Mazda served notice of intent to terminate Auburn Valley's dealership. *See, e.g.,* Howard Decl. ¶ 21. Mazda's termination notice informed Auburn Valley that the Dealer Agreement would terminate, "effective fifteen (15) calendar days after [its] receipt of [the] letter." *Id*. ¶ 23. Auburn Valley received the termination notice on February 28, 2011, which made the effective dealership termination date March 15, 2011. When Auburn Valley did not file a

ORDER - 3

petition to challenge the dealer termination by March 15, 2011, Mazda proceeded to terminate the dealership on March 18, 2011. *Id.* ¶ 23. This termination resulted in Auburn Valley being cut off from the Mazda network, meaning it was unable to acquire new vehicles or parts from Mazda. Dkt. 19 at 5 (citing Declaration of Kirk Roempke).

On or about March 24, 2011, Auburn Valley filed a petition with the Department of Licensing ("DOL") for determination of good cause relating to Mazda's termination of the Dealer Agreement. Howard Decl. ¶ 24, Ex. 13 (copy of petition). The DOL assigned the petition to the Office of Administrative Hearings ("OAH"). *Id.* ¶ 25; *see also id.*, Ex. 14 (the assignment left the issue of timeliness of the petition to the OAH).

On April 18, 2011, Mazda filed a motion to dismiss Auburn Valley's petition to the OAH for lack of jurisdiction or in the alternative for summary determination. *Id.* Ex. 1. On May 10, 2011, the OAH administrative law judge ("ALJ") heard the matter telephonically and later issued a written decision dismissing the matter because Auburn Valley's petition was not timely filed pursuant to RCW sections 46.96.030, 46.96.040, and 46.96.070. Second Declaration of James E. Howard ("Howard Decl. II) ¶ 4, Ex. 3 (copy of ALJ's ruling).

At or about the same time, Auburn Valley also filed a parallel action in Pierce County Superior Court with a complaint and motion for temporary restraining order ("TRO") to enjoin the termination of the Dealer Agreement. *Id.* ¶ 5, Ex. 4 (copy of motion for TRO); Dkt. 1, Ex. A (Complaint, alleging breach of the Dealer Agreement and violation of the Consumer Protection Act). On April 6, 2011, the Commissioner hearing the TRO denied the motion as untimely. *Id.* ¶ 6, Ex. 5 (copy of memorandum of journal entry by the Commissioner). Subsequently, Mazda removed the action to this Court. Dkt. 1. The Court denied Auburn Valley's motion to remand. Dkt. 16.

Following the Court's order denying Auburn Valley's motion for remand, Auburn Valley filed the instant motion for preliminary injunction. Dkt. 19.

## III. DISCUSSION

**A.    Statutory Framework, Dealer Termination**

Washington's Legislature developed a statutory framework that governs new automotive dealer terminations, such as in the case at bar. *See* RCW 46.96.030, 46.96.040, and 46.96.070. It enacted the statutory scheme with "the intent to *impose a regulatory scheme* . . . in the motor vehicle industry to the extent necessary to balance fairness and efficiency." RCW 46.96.010 (legislative findings, emphasis added). Under this scheme a manufacturer may terminate a dealership only if it follows the statutory scheme set out within RCW 46.96. The scheme provides a means for the dealership to challenge such termination by filing a petition to be heard by an ALJ in an adjudicative proceeding. A closer look at each of the relevant statutes is helpful for deciding the instant motion.

RCW 46.96.030 provides:

> Notwithstanding the terms of a franchise and notwithstanding the terms of a waiver, no manufacturer may terminate, cancel, or fail to renew a franchise with a new motor vehicle dealer, unless the manufacturer has complied with the notice requirements of RCW 46.96.070 and an administrative law judge has determined, if requested in writing by the new motor vehicle dealer within the applicable time period specified in RCW 46.96.070 (1), (2), or (3), after hearing, that there is good cause for the termination, cancellation, or nonrenewal of the franchise and that the manufacturer has acted in good faith, as defined in this chapter, regarding the termination, cancellation, or nonrenewal. Between the time of issuance of the notice required under RCW 46.96.070 and the effective termination, cancellation, or nonrenewal of the franchise under this chapter, the rights, duties, and obligations of the new motor vehicle dealer and the manufacturer under the franchise and this chapter are unaffected, including those under RCW 46.96.200.

RCW 46.96.040 provides:

> A new motor vehicle dealer who has received written notification from the manufacturer of the manufacturer's intent to terminate, cancel, or not renew the franchise *may file a petition* with the department for a determination as to the existence of good cause and good faith for the termination, cancellation, or nonrenewal of a franchise. The petition shall contain a short statement setting forth the reasons for the dealer's objection to the termination, cancellation, or nonrenewal of the franchise. Upon the filing of the petition and the receipt of the filing fee, the department shall promptly notify the manufacturer that a timely petition has been filed and shall request the appointment of an administrative law judge under chapter

ORDER - 5

> 34.12 RCW to conduct a hearing. The franchise in question shall continue in full force and effect pending the administrative law judge's decision. If the decision of the administrative law judge terminating, canceling, or failing to renew a dealer's franchise is appealed by a dealer, the franchise in question shall continue in full force and effect until the appeal to superior court is finally determined or until the expiration of one hundred eighty days from the date of issuance of the administrative law judge's written decision, whichever is less. Nothing in this section precludes a manufacturer or dealer from petitioning the superior court for a stay or other relief pending judicial review.

(Emphasis added). RCW 46.96.070 provides:

> Before the termination, cancellation, or nonrenewal of a franchise, the manufacturer shall give written notification to both the department and the new motor vehicle dealer. For the purposes of this chapter, the discontinuance of the sale and distribution of a new motor vehicle line, or the constructive discontinuance by material reduction in selection offered, such that continuing to retail the line is no longer economically viable for a dealer is, at the option of the dealer, considered a termination, cancellation, or nonrenewal of a franchise. The notice shall be by certified mail or personally delivered to the new motor vehicle dealer and shall state the intention to terminate, cancel, or not renew the franchise, the reasons for the termination, cancellation, or nonrenewal, and the effective date of the termination, cancellation, or nonrenewal. The notice shall be given:
> ***
> (2) *Not less than fifteen days* before the effective date of the termination, cancellation, or nonrenewal with respect to any of the following that constitute good cause for termination, cancellation, or nonrenewal:
> ***
> (c) *Conviction of the new motor vehicle dealer, or principal operator of the dealership, of a felony punishable by imprisonment*; or

(Emphasis added).

Applying this statutory framework to this case, the Court reads the relevant provisions together, based on the applicable rules of statutory construction. These provisions cross reference each other and are interrelated in form and function. These provisions also appear to have provided Auburn Valley with an exclusive remedy to challenge Mazda's termination of the parties' Dealer Agreement.

That being the case, RCW 46.96.040 required Auburn Valley to file a timely petition to the DOL if it wished to challenge the propriety of Mazda's termination of the Dealer Agreement; a timely petition, in this case, would have occurred within fifteen days of receipt of the termination letter. *Compare* RCW 46.96.030 (dealership may be

ORDER - 6

terminated if, when requested within the time specified in RCW 46.96.070 (1), (2), or (3), an ALJ determines good cause for termination has been shown) *with* RCW 46.96.070(2) (15 days notice for termination based on felony convictions). Compliance with these statutes would have provided Auburn Valley with an automatic injunction pending the administrative agency's determination of this matter. *See* RCW 46.96.040. If the decision favored Mazda, Auburn Valley could then appeal that decision to superior court, which would have left Auburn Valley operating in "full force and effect until the appeal to superior court is finally determined or until the expiration of one hundred eighty days from the date of issuance of the administrative law judge's written decision, whichever is less." *Id*.

Here, the ALJ that reviewed Auburn Valley's petition interpreted the foregoing statutory framework consistent with this Court's understanding of the statutes, and dismissed Auburn Valley's petition for an administrative proceeding and hearing as untimely. Howard Decl. II, Ex. 3 (copy of ALJ Rack's decision). Similarly, the Commissioner who considered Auburn Valley's TRO also found Defendant's motion for temporary injunctive relief untimely pursuant to RCW 46.96.070. *Id*. Ex. 5 (copy of Commissioner's ruling).

Auburn Valley argues that this statutory framework provides the baseline to supplement the Dealer Agreement rather than abrogate its contract rights, which may have additional provisions to be enforced. Specifically, Auburn Valley argues that any effect of Roempke's felony on the dealership or Mazda did not rise to the level that would be considered significant thereby permitting Mazda to terminate the Dealer Agreement pursuant to Section 22.

However, whether and to what extent Roempke's felony had on other Mazda dealerships or Mazda generally is not pertinent to deciding this motion. The statutory framework applicable to dealer franchise termination required Auburn Valley to timely petition the ALJ to challenge any termination notice, which Auburn Valley concedes it

failed to do. Dkt. 24 at 4; *see also* RCW 46.96.030, 46.96.040, and 46.96.070. Although Auburn Valley argues that it was under the impression that Mazda would not seek to terminate the Dealer Agreement because it was allegedly willing to assign the Dealer Agreement to Kirk, Auburn Valley has not supplied adequate authority for purposes of the instant motion that this belief permits it to fail to file a timely petition for review by an ALJ, as required by the comprehensive statutory scheme that appears to provide the exclusive remedy in matters such as this case. Therefore, the Court is unpersuaded by Auburn Valley's argument on this point.

Auburn Valley also argues that RCW 46.96.040 requires an automatic stay following the decision of the ALJ in this matter. Dkt. 24 at 5. However, Auburn Valley's argument misinterprets the plain language of RCW 46.96.040. It provides, in relevant part, that the automatic injunction of up to 180 days "shall continue in full force and effect until the *appeal* to the superior court is finally determined or until the expiration of one hundred eighty days from the date of issuance of the [ALJ's] written decision, whichever is less." RCW 46.96.040. In short, this provision presumes either a timely petition or an appeal of the administrative decision. It does not, however, contemplate parallel actions to consider the propriety of a dealer termination that is predicated on a dealer principal's felony conviction.

It is undisputed that Auburn Valley did not timely file a petition to the DOL for review by an ALJ or that it appealed the ALJ's decision. Auburn Valley has also not supplied this Court with adequate authority to establish that it may, within the context of this litigation, indirectly appeal the ALJ's decision that the petition was untimely. Therefore, the Court is unpersuaded by Auburn Valley's argument on this point.

Auburn Valley next argues that the final sentence in RCW 46.96.040 permits it to file the instant preliminary injunction. *See* Dkt. 24 at 5. The final sentence of RCW 46.96.040 provides as follows: "Nothing in this section precludes a manufacturer or dealer from petitioning *the* superior court for a stay or other relief pending judicial

review." RCW 46.96.040 (emphasis added). Auburn Valley's argument isolates the foregoing clause from the interrelated set of statutes and thereby takes it out of context; instead, it must be read in conjunction with its precedent clause rather than in isolation. The preceding clause effectively provides that a party receiving an unfavorable decision by the ALJ regarding the propriety of a dealer termination may appeal to superior court, which invokes the automatic injunction provision. The antecedent clause then effectively provides that a manufacturer or dealer may petition the superior court hearing the appeal of the administrative decision for a stay or other relief pending judicial review.

Applied here, had Auburn Valley appealed the administrative decision to superior court and the automatic 180-day injunction was set to expire, nothing in RCW 46.96.040 would prevent Auburn Valley from seeking an additional 180-day injunction or other such relief as warranted, pending the superior court's judicial review. Therefore, based on the foregoing, the Court is also unpersuaded by Auburn Valley on this point.

**B.     Preliminary Injunction Standard**

" A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH and Co. Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)).To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 376 (2008). Traditionally, injunctive relief was also appropriate under an alternative "sliding scale" test. *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). However, the Ninth Circuit overruled this standard in keeping with the Supreme Court's decision in *Winter*. *American Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

2009) (holding that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable").

### 1. Irreparable Harm

Auburn Valley will not suffer irreparable harm if the Court declines to enter a preliminary injunction in this matter because (1) Mazda already cut Auburn Valley off from the Mazda network on March 18, 2011, and (2) the ALJ already determined that Auburn Valley filed an untimely petition to challenge the dealer termination. Following these events, the status quo has shifted from Auburn Valley running a dealership in the Mazda network to Auburn Valley not being a part of the Mazda dealer network. It would go against the principles of preliminary injunctive relief to grant Auburn Valley's motion and shift the status quo back to what it was prior to the dealer termination. In short, the Court cannot now prevent the irreparable harm that occurred three months ago when Mazda cut Auburn Valley out of the network and terminated its Dealer Agreement.

Even if the Court assumed without deciding that Auburn Valley could establish the element of irreparable harm, Auburn Valley cannot establish all or some of the remaining, necessary elements to obtain a preliminary injunction.

### 2. Public Interest

Auburn Valley argues that

> the Legislature has repeatedly identified the vital public interest at stake in all aspects of regulation of manufacturers in their dealings with in-state relationships. This extends to consumers, who as Kirk Roempke identified will have to travel much further distances to have their warranty work done . . ., as well as to employees who face termination of their livelihood while this matter is pending if the Dealer Agreement is treated as revoked at this time.

Dkt. 19 at 10.

While this argument is somewhat persuasive, it ignores the portions of the comprehensive statutory framework that the Legislature created to provide dealers with an exclusive remedy for preventing the very harm described by Auburn Valley. The statutory scheme set out in RCW 46.96.30, 46.96.040, and 46.96.070 demonstrates that

ORDER - 10

the Washington Legislature also finds there to be a competing public interest in the efficient and expedient, but justified, termination of dealership agreements. *See* RCW 49.96.070(2) (setting out a 15-day timeframe for notice and effective termination based on a felony conviction of a dealer principal). The Court is persuaded by Mazda's argument that such a public interest can be described as one for certainty amongst automobile dealerships and manufacturers with respect to their dealer agreements and the public's interest in its consumers' certainty as to whether or not a business will remain operable.

Applying these competing interests here, the Court finds it dispositive that Auburn Valley was cut off from the Dealer Network over three months ago and Mazda has already made arrangements for Auburn Valley's customers to obtain warranty service and their other Mazda needs from competing dealerships. While this situation may have created obvious hardships to Auburn Valley's employees and its customers, that interest is outweighed by the competing interest for consumer certainty. *See* RCW 46.96.010 ("it is necessary to regulate the relationship between motor vehicle dealers and manufacturers . . . for the benefit of the public in assuring the continued availability and servicing of automobiles sold to the public").

On balance, the Court finds that the public interest in this case weighs in favor of denying Auburn Valley's motion for preliminary injunction.

### 3. Balance of Equities

The equities in this case are relatively straight forward. If the Court granted the preliminary injunction, Mazda would be required to continue dealing with Auburn Valley as described in the Dealer Agreement. Auburn Valley would remain in business and its employees would not lose their jobs.

On the other hand, if the Court enjoins the termination of the Dealer Agreement, Mazda will have to reverse its efforts to direct former Auburn Valley customers to new competitor dealers for their Mazda product needs (e.g., maintenance and repair). Upon

termination of the Dealer Agreement, which took effect on March 15, 2011, Mazda cut Auburn Valley off from the dealer network. The comprehensive statutory scheme envisions a manufacturer's ability to quickly and efficiently sever ties with a dealership within 15 days of notice that it is doing so based on a felony conviction of a dealer principal. RCW 46.96.070(2).

On balance, the Court finds that the equities tip in favor of Mazda because reversing its disassociation with Auburn Valley would be too onerous and contrary to the comprehensive statutory scheme's purpose of providing stability in the market for consumers following a dealership termination.

### 4. Likelihood of Success on the Merits

Auburn Valley predicates its likelihood of success on the merits on "the specific terms and conditions of its [D]ealer [A]greement with Mazda." Dkt. 24 at 6. Specifically, it argues that, "[t]he terms of the [D]ealer [A]greement, negotiated for by the parties allows for a termination only in the event that a felony conviction results in a 'significant adverse effect'" on Auburn Valley, Mazda, or other Mazda dealers. *Id*.

As discussed above, the Court does not doubt that Mazda and Auburn Valley could contract beyond what has been referred to as the baseline statutory framework. However, the Court is unpersuaded by Auburn Valley that it may fail to timely seek its exclusive remedy under the statutory framework outlined above and then seek redress in this Court. Auburn Valley failed to timely file a petition to challenge the Mazda's termination of the Dealer Agreement, which was required under the statutory framework discussed above. Further, it appears there may be some issues with res judicata, in that Auburn Valley should have timely challenged the notice of termination and, at that time, alleged its current challenges to the termination for review by the ALJ.

In short, it appears that Auburn Valley is not likely to succeed on the merits of its claims that Mazda breached its agreement. Therefore, the Court finds that this element weighs heavily in favor of Mazda.

### 5. Conclusion

Based on the foregoing, the Court concludes that Auburn Valley has not successfully established each of the elements necessary to obtain preliminary injunctive relief.

### C. Mazda's Motion to Dismiss

Mazda moves this Court to dismiss Auburn Valley's entire case pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 22 (Mazda's motion to dismiss and response in opposition to Auburn Valley's motion for preliminary injunction). Because this motion is not ripe yet, the Court declines to rule on it at this time. The parties may continue briefing this motion in accord with the local rules.

### D. Supplemental Briefing

For purposes of deciding the motion to dismiss, the Court finds inadequate the parties' briefing on whether or not the comprehensive statutory scheme, RCW 49.96, provides Auburn Valley with the exclusive remedy/process by which it may challenge its dealership termination. The Court requests that the parties file additional briefing on this narrow issue. To accommodate this request, the Court renotes Mazda's motion to dismiss (Dkt. 22) to August 3, 2011. Mazda shall file a supplemental brief to its motion to dismiss on or before July 15, 2011. Auburn Valley shall address this issue in its response in opposition to the motion to dismiss on or before July 29, 2011. Mazda may file a reply that includes a discussion of this issue on or before August 3, 2011. Supplemental briefing on this issue shall not exceed 10 pages in the opening briefs and 5 pages in any reply brief.

## IV. ORDER

Therefore, it is hereby **ORDERED** that

(1) Auburn Valley's motion for preliminary injunction is **DENIED** for the reasons stated herein;

(2) The parties are **ORDERED** to file supplementary briefing on the motion to dismiss (Dkt. 22) as discussed herein.

(3) Mazda's motion to dismiss (Dkt. 22) is **RENOTED** for August 3, 2011.

DATED this 30th day of June, 2011.

BENJAMIN H. SETTLE
United States District Judge