UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CONTINENTAL CARS, INC., a
Washington corporation, dba AUBURN
VALLEY MAZDA,

Plaintiff,

v.

MAZDA MOTOR OF AMERICA, INC.,
a California corporation, dba MAZDA
NORTH AMERICAN OPERATIONS,

Defendant.

CASE NO. C11-5266BHS

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FED.
R. CIV. P. 12(C)

This matter comes before the Court on Defendant's ("Mazda") motion to dismiss
Plaintiff's ("Auburn Valley") case under Federal Rule of Civil Procedure ("Fed. R. Civ.
P.") 12(C). Dkt. 22. The Court has considered the pleadings filed in support of and in
opposition to the motion and the remainder of the file and hereby denies the motion for
the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 20, 2011, Auburn Valley filed a motion for preliminary injunction. Dkt.
19. On June 13, 2011, Mazda filed a motion in opposition to the motion for preliminary
injunction combined with a motion to dismiss (Dkt. 22) pursuant to Fed. R. Civ. P. 12(C)
(judgment on pleadings).

On June 30, 2011, the Court denied Auburn Valley's motion for preliminary
injunction and renoted Mazda's motion to dismiss for consideration on its calendar for

1   August 3, 2011. On July 29, 2011, Auburn Valley responded in opposition to Mazda's

2   motion to dismiss. Dkt. 30. On August 3, 2011, Mazda replied. Dkt. 31.

## II. FACTUAL BACKGROUND

4       This case arises out of Mazda's alleged breach of a contract (the "Agreement")

5   that it entered into with Auburn Valley. For a more complete factual background see the

6   Court's order denying Auburn Valley's motion for preliminary injunction. Dkt. 28.

7       Auburn valley alleges that Mazda breached the Agreement when it terminated

8   Auburn Valley's dealership pursuant to the regulatory scheme of RCW Chapter 46.96.

9   Mazda terminated Auburn Valley's dealership based upon the felony conviction of

10  Auburn Valley's principal owner, Wolfgang "Tito" Roempke ("Roempke"). Although

11  Auburn Valley filed a petition with an administrative law judge ("ALJ") to protest the

12  termination, it concedes that an ALJ found its protest to be untimely and that the ALJ's

13  decision is not subject to challenge in this action. Nonetheless, Auburn Valley filed the

14  instant civil action alleging breach of contract and violation of the Consumer Protection

15  Act ("CPA").

16      Contrary to Mazda's position, Auburn Valley argues that RCW Chapter 46.96

17  does not provide the exclusive remedy for challenging its termination as a dealership in

18  the Mazda network. Specifically, Auburn Valley argues that the Agreement contained a

19  condition precedent that operated to prevent Mazda from executing a felony conviction

20  termination of dealership under RCW Chapter 46.96 in this case.

21      The specific provision that Auburn Valley contends is at issue in this case is found

22  within its agreement with Mazda. Paragraph 22(B) of the Agreement provides as follows:

23      **(i) Immediate Termination.** Dealer and Mazda agree that any
        instance of the conduct is so contrary to the goals, purposes and objectives
24      of this Agreement as to warrant its immediate termination upon written
        notice by Mazda to Dealer:

25                                      * * *

26      (c) Dealer, or any Owner, shareholder, member, partner, director,
        officer (collectively, "**Dealer Party**"), or parent company of Dealer, is
        convicted of a felony or enters a plea of guilty to a felony charge, *which*
27      *results in a significant adverse effect either on Dealer's Business or on the*
        *reputation of Dealer, Mazda or Mazda Dealers generally*. Provided

28

however, that if the subject Dealer Party owns a minority interest, or no interest, in Dealer, upon written notice from Mazda, Dealer shall have a reasonable period of time as set forth in such notice to disassociate from the Dealer Party in question through means and in a manner acceptable to Mazda.

*Id*. ¶ 6 (reproducing relevant portion of Dealer Agreement) (emphasis added).

In opposition, Mazda argues that RCW Chapter 46.96 does provide the exclusive remedy for Auburn Valley to challenge its dealership's termination based on a felony conviction of Roempke. Alternatively, it argues that Auburn Valley is prevented from filing this action under the doctrine of *res judicata*. It also argues that Auburn Valley cannot satisfy the elements required to be successful in its CPA claim.

### III.  DISCUSSION

Mazda moves the Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(C). Dkt. 22. Within its motion Mazda argues that Auburn Valley's breach of contract claim is barred by *res judicata* and that Mazda has not supplied sufficient facts to support its CPA claim. *See id.*

Determining Mazda's motion requires the Court to first determine whether RCW Chapter 46.96 provides the exclusive remedy for Auburn Valley to challenge its dealership's termination by Mazda, specifically based upon Roempke's felony conviction. If RCW Chapter 46.96 does not provide an exclusive remedy in cases of felony conviction dealership terminations, the Court must then determine whether Auburn Valley has presented the Court with actionable claims for breach of contract and violations of the CPA.

### A.  Exclusive Remedies

The Washington Supreme Court recently had occasion to set out the manner by which a court determines whether a statutory scheme provides the exclusive remedy for an aggrieved party to seek relief for harms alleged. *See Potter v. Washington State Patrol*, 165 Wn.2d 67 (2008). The *Potter* court was "asked to decide whether the process for redeeming an impounded vehicle as set forth in RCW 46.55.120 [provides] the exclusive

remedy for a person whose vehicle is unlawfully impounded." *Id*. at 72. It held that "RCW 46.55.120 is not exclusive and, therefore, a person whose vehicle is unlawfully impounded may bring a conversion action against the authority that authorized the impoundment." *Id*. In so holding, the *Potter* court reasoned that RCW 46.55.120 only governed redemption of an impounded vehicle and did not pertain to other actions that one might raise in a civil action (i.e., not before an administrative hearing board) such as conversion. *See id.*

Mazda argues that *Potter* is inapplicable to this case because Auburn Valley seeks to challenge its dealership's termination based on a felony conviction and that unlike the case in *Potter*, the regulatory scheme at issue in this case specifically addresses felony conviction terminations. However Mazda's reading of *Potter* is oversimplified.

In this case, Auburn Valley asserts that it is attempting to enforce its contract rights under the Agreement, which arguably provides Auburn Valley with more protection against a felony conviction termination than provided for by RCW Chapter 46.96. Specifically, Auburn Valley points to paragraph 22(B) of the Agreement, which permits termination based on a felony conviction only in the case where the felony conviction had a "significant adverse effect" on Mazda, Auburn Valley, or other Mazda dealers' businesses or reputations. In contrast, RCW 46.96.070(2)(c) requires only a showing of good cause by the manufacturer to warrant termination.

Auburn Valley concedes that it cannot challenge the ALJ's prior determination that Mazda established good cause under 46.96.070(2)(c), but this is only statutory good cause. Auburn Valley takes the position that Mazda must establish more than statutory good cause to effect the termination based on Roempke's felony conviction because the parties agreed to such a requirement under paragraph 22(B) of their Agreement. Therefore, the real question presented is whether RCW Chapter 46.96.070(2)(c) provides Auburn Valley with an exclusive or cumulative remedy to challenge the instant dealer termination, using the *Potter* analytical framework.

1      The *Potter* court set out the analytical framework to be applied by a court in

2   determining whether or not a Washington statute is meant to provide an exclusive remedy

3   and the implications of finding a statute to provide such an exclusive remedy:

4          In general, our state is governed by the common law to the extent the
       common law is not inconsistent with constitutional, federal, or state law.
5      RCW 4.04.010. The legislature has the power to supersede, abrogate, or
       modify the common law. *See State v. Estill*, 50 Wn.2d; *State v. Mays*, 57
6      Wash. 540, 542 (1910). However, we are hesitant to recognize an
       abrogation or derogation from the common law absent clear evidence of the
7      legislature's intent to deviate from the common law. "It is a
       well-established principle of statutory construction that '[t]he common law.
8      . . ought not to be deemed repealed, unless the language of a statute be clear
       and explicit for this purpose.'" *Norfolk Redevelopment & Hous. Auth. v.*
9      *Chesapeake & Potomac Tel. Co. of Virginia*, 464 U.S. 30, 35-36 (1983)
       (alterations in original) (quoting *Fairfax's Devisee v. Hunter's Lessee*, 11
10     U.S. (7 Cranch) 603, 623 (1812)). A law abrogates the common law when
       "the provisions of a . . . statute are so inconsistent with and repugnant to the
11     prior common law that both cannot simultaneously be in force." *State ex*
       *rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wash.2d 219, 222 (1973). A
12     statute in derogation of the common law "must be strictly construed and no
       intent to change that law will be found, unless it appears with clarity."
13     *McNeal v. Allen*, 95 Wash.2d 265, 269, 621 P.2d 1285 (1980).
                                    ***
14         If a remedy provided by a statute is exclusive, the statute implicitly
       abrogates all common law remedies within the scope of the statute. To
15     determine whether a statutory remedy is exclusive, the court must first
       examine the language and provisions of the statute in question. *Wilmot v.*
16     *Kaiser Aluminum & Chem. Corp.*, 118 Wash.2d 46, 54 (1991). A statute
       may include an exclusivity provision. *Id.* at 62, 821 P.2d 18. However, the
17     absence of such an exclusivity provision "does not defeat the case for
       preemption." *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wash.2d
18     847, 853 (1989). If the language of the statute is inconclusive, the court may
       look to other manifestations of legislative intent. *Wilmot*, 118 Wash.2d at
19     54, 821 P.2d 18.
                                    ***
20         In the absence of statutory language or provisions clearly
       establishing the exclusivity of a remedy, we may look to "other
21     manifestations of legislative intent" to determine whether the legislature
       clearly intended a statute to be an exclusive remedy. *Wilmot* [*v. Kaiser*
22     *Aluminum & Chem. Corp.*, 118 Wn.2d 46, 54 (1991)]. In Wilmot, we
       considered, among other things, the comprehensiveness of the remedy
23     provided by the statute, the purpose of the statute, and the origin of the
       statutory right. *Id.* at 61-65.

24  *Id.* at 77-84.[1]

25

26  _____

27      [1]In its discussion on abrogation, the *Potter* court noted that (1) "derogation [is the] partial
    repeal or abrogation of a law by a later act that limits its scope or impairs its utility and force";
28  (2) to "abrogate" is "[t]o abolish (a law or custom) by formal or authoritative action; to annul or

Although RCW Chapter 46.96 may contain an exclusive remedy for dealer terminations in certain circumstances not before this Court, the Court's inquiry herein is as to whether 46.96.070(2)(c) provides an exclusive remedy for a dealer to challenge a termination based on the felony conviction of its principal.

### 1.   Exclusivity Clause

"The first consideration in determining the exclusivity of a statute is whether the statute contains an exclusivity clause." *Potter*, 165 Wn.2d at 80 (citing *Wilmot*, 118 Wn.2d at 62). The Court concludes that the statutory language at issue contains no explicit statement of exclusivity within RCW Chapter 46.96 as it pertains to felony conviction terminations and its related provisions.

### 2.   Legislative Intent

"In the absence of an explicit statement of exclusivity, [a court] examine[s] the language and provisions of a statute to determine whether the legislature intended a statutory remedy to be exclusive." *Potter*, 165 Wn.2d at 81 (citing *Wilmot*, 118 Wn.2d at 54). Here, examination of the statutory language and provisions supports Auburn Valley's position that the Washington Legislature did not intend for RCW 46.96 to provide an exclusive remedy in cases such as this.

To begin with, in RCW Chapter 46.96, the Washington legislature expressed its findings as follows:

> The legislature finds and declares that the distribution and sale of motor vehicles in this state vitally affect the general economy of the state and the public interest and public welfare, that provision for warranty service to motor vehicles is of substantial concern to the people of this state, that the maintenance of fair competition among dealers and others is in the public interest, and that the maintenance of strong and sound dealerships is essential to provide continuing and necessary reliable services to the consuming public in this state and to provide stable employment to the

---

repeal"; and (3) within its opinion the court refers "to case law dealing with both derogations and abrogations of the common law because in both instances the legislature's intent to deviate from the common law must be clear and explicit. '[I]t must not be presumed that the legislature intended to make any innovation on the common law without clearly manifesting such intent.'" 165 Wn.2d at 77 n. 8.

citizens of this state. The legislature further finds that there is a substantial disparity in bargaining power between automobile manufacturers and their dealers, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to regulate the relationship between motor vehicle dealers and motor vehicle manufacturers, importers, distributors, and their representatives doing business in this state, not only for the protection of dealers but also for the benefit for the public in assuring the continued availability and servicing of automobiles sold to the public.

The legislature recognizes it is in the best interest for manufacturers and dealers of motor vehicles to conduct business with each other in a fair, efficient, and competitive manner. The legislature declares the public interest is best served by dealers being assured of the ability to manage their business enterprises under a contractual obligation with manufacturers where dealers do not experience unreasonable interference and are assured of the ability to transfer ownership of their business without undue constraints. It is the intent of the legislature to impose a regulatory scheme and to regulate competition in the motor vehicle industry to the extent necessary to balance fairness and efficiency. These actions will permit motor vehicle dealers to better serve consumers and allow dealers to devote their best competitive efforts and resources to the sale and services of the manufacturer's products to consumers.

RCW 46.96.010 (Legislative Findings).

The foregoing provision expresses the legislature's intent to balance power in a way that returns dealers to an arm's-length position with manufacturers. Indeed, the intent is to assure "dealers . . . of the ability to manage their business . . . under a contractual obligation" and only to regulate the industry "to the extent necessary to balance fairness and efficiency." Put otherwise, the legislature did not intend to abrogate a dealer's contractual rights or preempt other statutory remedies (e.g., remedies available for successful CPA claims); rather, the foregoing quoted language merely expresses an intent to provide a baseline from which manufacturers cannot depart.

Mazda attempts challenges such an interpretation by arguing that the "statute is clear in providing that termination of a dealership is governed by RCW 46.96.030-.090 *notwithstanding the terms of the Dealer Agreement.*" Dkt. 31 at 9 (emphasis added). Mazda's argument is predicated on interpreting the phrase "notwithstanding the terms of the [franchise agreement]" as meaning the contract is superseded by or preempted by the statute and, therefore, provides Auburn Valley with its exclusive remedy in cases of felony conviction termination. However, such an interpretation is not supported by a

complete reading of RCW Chapter 46.96.[2] Where the legislature uses the same phrase within a statutory scheme it is deemed to have the same meaning for each use unless otherwise provided for therein.

Here, many of the sections of RCW Chapter 46.96 begin with the phrase "notwithstanding the terms of the franchise [agreement]." *See, e.g.,* RCW 46.96.150(4) ("Notwithstanding the terms of a franchise [agreement] . . . and notwithstanding the terms of a waiver, the arbitration will take place in the state of Washington in the county where the protesting dealer has his or her principal place of business."). As is plain to see from RCW 46.96.150(4) and the comparable provisions, this phrase – "notwithstanding the terms of a franchise [agreement] – is meant to set out the baseline for which a manufacturer cannot depart. Interpreting this language as such readily comports with the legislative intent to balance power between the dealer and the manufacturer. In short, such a provision prevents the manufacturer from exerting its typically greater power to negotiate for things like arbitration to occur in Japan, for example, rather than the dealer's county of business in Washington.[3] In other words, the regulatory scheme simply sets out the baseline from which new automotive manufacturers and dealers cannot bargain below; nothing in the scheme suggests they cannot agree to greater protections for the dealer.

Therefore, the Court concludes that the language at issue does not support a conclusion that the legislature intended for RCW Chapter 46.96 to provide the exclusive remedy in cases of dealer termination.

_____

[2]Mazda takes an interesting position here considering that the parties executed their Agreement well after RCW Chapter 46.96 was enacted and still decided to place a condition precedent within their contract that purports to prevent Mazda from terminating the dealership solely on a finding of statutory good cause.

[3]Presumably, a dealer like Auburn Valley would have no interest in arbitrating in Japan versus the county in which it does business in Washington.

### 3.     Other Manifestations of Intent for Exclusivity

"In the absence of statutory language or provisions clearly establishing the exclusivity of a remedy, [a court] may look to 'other manifestations of legislative intent' to determine whether the legislature clearly intended a statute to be an exclusive remedy." *Potter*, 165 Wn.2d at 84 (citing *Wilmot*, 118 Wn.2d at 54, 821 P.2d 18). The *Potter* Court discussed that, "[i]n *Wilmot*, [it] considered, among other things, the comprehensiveness of the remedy provided by the statute, the purpose of the statute, and the origin of the statutory right." *Id.* (citing *Wilmont*, 118 Wn.2d at 61-65).

### a.     Comprehensiveness

"The adequacy or comprehensiveness of a statutory remedy is a factor to consider when determining whether the legislature intended for a statutory remedy to be exclusive." *Id.* (citing *Wilmot*, 118 Wn.2d at 61). Here, the general statutory scheme provides Mazda and Auburn Valley an expedited means for determining whether good cause is shown to justify termination based on the felony conviction of Roempke. *See* RCW 46.96.040 (permitting a dealer to file a challenge to its termination notice before an ALJ); *see also* RCW 46.96.070(2)(c) (permitting termination based on felony conviction where good cause is shown). The scheme vests an ALJ with authority to determine, when petitioned, whether good cause is shown. *Id*.

However, in this case, the parties agreed to a condition precedent that required more than the statutory good cause to be shown before Mazda could terminate Auburn Valley's dealership on the basis of Roempke's felony conviction. Provision 22(B) of the Agreement required a showing of a felony conviction, "which results in a significant adverse effect either on Dealer's Business or on the reputation of Dealer, Mazda or Mazda Dealers generally."  Nothing in the regulatory scheme at issue vests authority with the ALJ to determine this additional showing over and above the statutory good cause requirement. As such, the scheme does not provide comprehensive relief to Auburn Valley.

1    Therefore, this consideration weighs in favor of finding the regulatory scheme to

2    be cumulative rather than exclusive.

3               **b.    Purpose**

4    The *Potter* court discussed the issue of *purpose* as follows:

5          When determining whether a statute is exclusive, the court should
       strive to uphold the purpose of the statute. The legislative history of the
6       challenged statute should be reviewed to determine whether allowing a
       common law action to proceed would frustrate the legislative purpose of the
7       statute.

8    *Id*. at 87 (citations omitted). Here, the purpose of the statute is, as discussed above, to

9    provide a means by which the balance of power will be equalized between dealer and

10   manufacturer and the public's interest in stability will be cared for. *See* RCW 46.96.010.

11   While the legislative findings do discuss the "best interest" of the manufacturer, the

12   weight of the legislative findings and the manner in which the provisions of the scheme

13   are drafted support a conclusion that the regulatory scheme was enacted for the benefit of

14   dealers and the public at the expense of weakening the manufacturers' bargaining

15   position. RCW 46.96.010 ("the public interest is best served by *dealers* being assured of

16   the ability to manage their business enterprises under a *contractual obligation* with

17   manufacturers where *dealers* do not experience unreasonable interference . . . .")

18   (emphasis added).

19         The Court finds nothing in the regulatory scheme that expresses as its purpose the

20   legislature's intent to reduce to fifteen days the traditional six-year statute of limitations

21   period for breach of contract claims. The same conclusion is true for other statutory

22   remedies having longer than 15-day limitations periods, like the CPA. Similarly, nothing

23   in the scheme purports to eliminate a dealer's ability to obtain and enforce contract rights

24   over and above the baseline found within the scheme.

25         In contrast to the Court's findings herein, Mazda argues that the regulatory scheme

26   at issue would be frustrated if a dealer is permitted to decide whether to protest

27   termination within 15 days pursuant to RCW 49.96.070 or, instead, to elect to file a civil

28

1   action for whatever remedies may otherwise be available. Mazda argues that doing so will

2   leave manufacturers in limbo for upwards of six years after it terminates a dealership and

3   subject manufacturers to inconsistent results. However, the Court is not persuaded by

4   Mazda's argument.

5        Instead, the Court finds the regulatory scheme's purpose as one in which the

6   legislature has created the availability of a fast track, offering dealers an efficient way to

7   challenge impending termination of their franchise by a manufacturer. However, here the

8   parties agreed to something beyond the available fast track. Further, it is not inconsistent

9   for an ALJ to determine that good cause is shown and a district court to also determine

10  that the manufacturer breached the contract by terminating based on a felony conviction

11  when more than stautory good cause to justify such a termination was bargained for

12  within the Agreement. Auburn Valley concedes that statutory good cause has been

13  established through the proceedings before the ALJ, but it contends and the Court is

14  persuaded that it obtained greater contractual rights within its Agreement.

15       Therefore, the purpose is not frustrated by permitting Auburn Valley to proceed on

16  its claims as it is before this Court.

17                    **c.    Origin**

18       The *Potter* court discussed the issue of *origin* as follows:

19            In determining whether a statute is exclusive, the court also
20       considers whether the statute creates a new right or whether the right
         preexisted the statute at common law. *Wilmot*, 118 Wn.2d at 62. Where the
         common law remedy predates the statutory remedy, the court infers the
21       statutory remedy is cumulative, not exclusive. *Id.* at 63.

22  *Potter,* 165 Wn.2d at 88.

23       Here, there is no doubt that the common law right to sue for breach of contract

24  predates RCW 46.96 and would, therefore, be cumulative and not exclusive. Further, the

25  CPA claims raised by Auburn Valley pertain to unfair practices that are enumerated

26  within Chapter 46.96 and for which the statute contemplates a separate civil action

27  notwithstanding any waiver of the administrative hearing regarding termination for felony

28

conviction. *See* RCW 46.96.185 (providing a comprehensive list of unfair practices); *see also* RCW 46.96.260 (permitting dealer to file civil action to recover damages for a manufacturers violation of RCW Chapter 46.96).

### 4.    Conclusion

Based on the foregoing, RCW Chapter 46.96 is cumulative of and not the exclusive remedy for Auburn Valley with respect to its termination as a Mazda dealership. Mazda has failed to supply this Court with adequate authority to the contrary.

**B.    Res Judicata**

Mazda argues that the principles of res judicata bar Auburn Valley from obtaining relief in this action. Specifically, it argues that Auburn Valley's untimely protest to the ALJ prevents it from now asserting its claims for breach of contract and violations of the CPA in this Court.

However, as discussed above, while the ALJ in this case had authority to determine whether good cause for Auburn Valley's felony conviction termination was established by Mazda, the ALJ did not possess authority to determine more than statutory good cause. In other words, Auburn Valley could not have asserted its additional contract rights that operate outside the statutory scheme and implicitly beyond the scope of the ALJ's authority.

Therefore, Mazda has not adequately shown that *res judicata* operates to bar Auburn Valley's claims in the instant action.

**C.    Auburn Valley's CPA Claim**

Auburn Valley's Complaint and the remaining record are sufficient to defeat Mazda's motion for judgment on the pleadings.

1

### IV. ORDER

2      Therefore, it is hereby **ORDERED** that Mazda's motion for judgment on the

3  pleadings is **DENIED** as discussed herein.

4      DATED this 9th day of September, 2011.

5

6      _____

7      BENJAMIN H. SETTLE
       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28